Harold J. HOLTER and Deborah L. Holter, individually and as the surviving parents of Christal L. Holter, deceased, Plaintiffs and Appellants,

v.

CITY OF SHEYENNE and Blane Stenberg, d/b/a Tastee Freez, Defendants and Appellees.

Civ. No. 910241.

Supreme Court of North Dakota.

Feb. 4, 1992.

Lee Hagen Law Office, Ltd., Fargo, for plaintiffs and appellants; argued by Paul D. Johnson.

McGee, Hankla, Backes, & Wheeler, Ltd., Minot, for defendant and appellee City of Sheyenne; argued by Robert J. Hovland.

Morley & Morley, Ltd., Grand Forks, for defendant and appellee Blane Stenberg, d/b/a Tastee Freez; argued by Robert M. Light.

ERICKSTAD, Chief Justice.

Harold and Deborah Holter (the Holters), parents of the deceased, Christal Holter, filed a wrongful death action under Chapter 32–21, N.D.C.C., against the defendants, Blane Stenberg d/b/a Tastee Freez (Tastee Freez) and the City of Sheyenne (the City). The district court entered a summary judgment dismissing the Holters' claims against both defendants, and the Holters filed this appeal. We affirm.

The City main street, running in a north/south direction, also known as U.S. Highway 281 (the highway), is a two-lane paved highway that is part of the state highway system. The Tastee Freez building is located on the west side of the highway, approximately 16 feet from the traveled portion of the roadway. Curbs, gutters, and sidewalks have been constructed along the east side of the roadway in the City limits, but the west side of the highway has not been developed beyond the construction of a 16–foot gravel shoulder. The Tastee Freez is bordered on the south side by Sheyenne Avenue and the exit of the Tastee Freez is located on the southeast corner of the building. There is a parking area located south of the Tastee Freez. Patrons exiting the Tastee Freez, intending to walk across the highway, first step onto the gravel shoulder and then across the highway.

On May 13, 1989, Christal, age 10, played video games at the Tastee Freez and purchased some candy there. She then exited the Tastee Freez and attempted to walk across the highway. A vehicle was parked at that time parallel to the Tastee Freez, between that facility and the traveled portion of the highway. The parked vehicle allegedly obstructed the vision of persons traveling on the highway and of pedestrians attempting to cross the highway after exiting the Tastee Freez. According to their deposition testimony, some of Christal's friends, who had also just left the Tastee Freez, crossed the highway first and then waited for Christal to cross. Christal was running as she entered the traveled portion of the highway, and a car driven by Dennis Ulmer struck her. Christal later died from her injuries.

The Holters filed a wrongful death action against the City and the Tastee Freez. Both defendants filed motions for summary judgment dismissal. After reviewing considerable deposition testimony, affidavits, and other relevant documents submitted to it, the district court concluded that neither the City nor the Tastee Freez owed a duty to Christal under the circumstances. The trial court entered a summary judgment dismissing the Holters' action against both defendants.

The Holters assert on appeal that the trial court erred in dismissing their action against the Tastee Freez, because the Tastee Freez owed a duty of care to Christal and because there are material questions of fact, about whether the Tastee Freez breached its duty, for a jury to decide.

The question of whether the Tastee Freez owed Christal a duty of care must be considered within the framework of our law on summary judgment. Under Rule 56, N.D.R.Civ.P., summary judgment should be granted only if, after viewing the evidence most favorable to the party against whom summary judgment is sought, it appears that there is no genuine issue as to any material fact or as to any inferences that may be drawn from undisputed facts, and that the party seeking summary judgment is entitled to it as a matter of law. *United Electric Service & Supply, Inc. v. Powers*, 464 N.W.2d 818 (N.D.1991). *Rawlings v. Fruhwirth*, 455 N.W.2d 574 (N.D.1990). The question of whether or not a duty exists in a negligence action is a question of law to be resolved by the court, and if the court

determines that there is no duty by the defendant to the plaintiff, then summary judgment dismissal is appropriate. *DeLair v. County of LaMoure*, 326 N.W.2d 55 (N.D.1982).

■ The Holters assert that Tastee Freez owed Christal, as a customer, a duty of care for her safety which extended beyond the Tastee Freez premises to the roadway where she was struck by the automobile. They assert that the Tastee Freez breached its duty of care toward Christal by failing to warn her of the dangers in crossing the highway and by failing to request the City to restrict parking in front of the Tastee Freez or to do whatever was necessary to prevent vehicles from parking there and obstructing the view of pedestrians and drivers on the highway. Upon reviewing the record, we agree with the district court that the Tastee Freez did not owe Christal a duty.

In *O'Leary v. Coenen*, 251 N.W.2d 746, 751 (N.D.1977), this court held that an occupier of premises has the following duty toward invitees and licensees on the premises:

> "An occupier of premises must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk."

The treatise *1 N.J. Landau, E.C. Martin, M.R. Thomas, Premises Liability Law and Practice*, §§ 4.01 and 4.04(2) (1991) states that a commercial property owner's duty to exercise reasonable care to avoid injury to invitees extends to providing "a reasonably safe means of ingress to and egress from the premises." This duty has been recognized in a number of decisions. *See, e.g., Laufenberg v. Golab*, 108 Ill.App.3d 133, 63 Ill.Dec. 875, 438 N.E.2d 1238 (1982).

This court implicitly applied the duty of providing reasonably safe ingress and egress for business invitees in *Johanson v. Nash Finch Company*, 216 N.W.2d 271 (N.D.1974). The plaintiff in that case was injured when she slipped and fell at the entryway of the defendant's store. She alleged that the store's three-sided entryway was not sheltered and that by allowing ice and snow to accumulate in front of the entryway the store owner created an unreasonable risk of harm to its invitees. We held that the trial court failed to correctly advise the jury on the question of whether the physical layout of the entryway created an unreasonably hazardous condition for store patrons, and we remanded the case for a new trial. The facts in this case are not similar.

Christal was injured on a public highway, not on the Tastee Freez premises. The vehicle parked between the Tastee Freez and the traveled portion of the highway, that allegedly contributed to the accident by partially obstructing the views of both Ulmer and Christal, was not on the Tastee Freez premises, and Tastee Freez had no control over the vehicle. Likewise, the Tastee Freez had no authority over parking or traffic regulations on the highway right-of-way. The Holters implicitly recognize that lack of authority in asserting that the Tastee Freez could have "asked" the City to restrict parking or to place different traffic signs on the roadway.

■ Generally, the owner of commercial premises adjacent to a public roadway owes no duty to a patron who is struck and injured by a vehicle as that patron is crossing or walking upon or along the roadway. *State v. Flanigan*, 489 N.E.2d 1216 (Ind. App.1 Dist.1986); *Laufenberg, supra; Nava v. McMillan*, 123 Cal.App.3d 262, 176 Cal.Rptr. 473 (1981). The key factor to finding that a property owner owes no duty to an injured party is that the owner has no control over the property where the injury occurred or the instrumentality causing the injury. *Jacobs v. Anderson Building Co.*, 459 N.W.2d 384 (N.D.1990); *see also Hellyer v. Law Capitol, Inc.*, 124 A.D.2d 782, 508 N.Y.S.2d 501 (1986). The facts in *Flanigan, supra*, and *Laufenberg, supra*, are similar to the circumstances here.

In *Laufenberg, supra*, the plaintiff was injured when she was struck by an automobile while crossing an intersection near the entrance of a horse stable maintained by

the defendant, Maywood Park Trotting Association (Maywood), which was in the business of conducting harness horse races. The plaintiff owned horses that she raced at Maywood's track. She sued Maywood, alleging that it had a duty to provide her with safe access across the intersection to its stable areas where she kept the horses she raced at Maywood's track. The Illinois Appellate Court, while recognizing that a property owner has a duty to furnish reasonably safe means of ingress and egress to business invitees on its premises, concluded that Maywood owed no legal duty to the plaintiff, because her injuries from being struck while crossing the intersection were the result of "... the intervention of an independent factor beyond the control of the defendant." *Laufenberg, supra,* 63 Ill. Dec. at 878, 438 N.E.2d at 1241. In this case Christal's injuries were also the result of factors not within Tastee Freez's control.

■ *Flanigan, supra,* is also instructive of the appropriate rule of law in this case. Patrons who had parked their vehicle along a highway to attend a flea market were injured as they were walking along the highway. The injured patrons sued the flea market operators, asserting that the operators had a duty to provide traffic control, to issue warnings, or to take other action to protect customers from being struck by a vehicle while walking to the flea market. The Indiana Court of Appeals, citing with approval the *Laufenberg, supra,* decision, held that an owner of a commercial premises adjacent to a public highway owes no duty of care to a patron who is crossing or walking along or upon the highway. We agree that a property owner owes no duty of care toward customers who have left the premises and are injured, upon an adjacent roadway, by an instrumentality not within the property owner's control.

In urging this court to find that Tastee Freez owed Christal a duty, the Holters assert that a business owes a greater duty of care for the safety of its minor customers than it owes to its adult customers. In support of this assertion, they cite several

decisions holding that vendors of ice cream or other products especially attractive to children, that move about selling their products along the streets, have a duty of care to warn and to otherwise protect the children from traffic hazards. *Roberts v. American Brewed Coffee,* 40 Ohio App.2d 273, 319 N.E.2d 218 (1973); *Hastings v. Smith,* 223 Tenn. 142, 443 S.W.2d 436 (1969); *Schwartz v. Helms Bakery, Ltd.,* 67 Cal.2d 232, 60 Cal.Rptr 510, 430 P.2d 68 (1967); *Mackey v. Spradlin,* 397 S.W.2d 33 (Ky.1965); see also Annot. 74 A.L.R.2d 1056 (1960). The duty of care found in each of the cited cases was predicated upon the fact that the vendors had invited children into and about the public streets to conduct business there. The courts concluded that the vendors should be held accountable to the children for the increased danger and risk of harm created by selling on the streets. The Kentucky Court of Appeals best stated the rationale underlying the decisions, in *Mackey, supra,* 397 S.W.2d at 37–38:

"In this particular type of situation the danger is enhanced by the sense of haste that is purposely aroused in the children of a neighborhood by the tinkling of bells and flashing of lights heralding the imminent arrival of an attraction that will stay but a moment and be gone unless they come at once. The responsibility of one who knowingly provokes into action the natural recklessness of irresponsible children ought surely be proportionate to the degree of danger he thereby creates.

"Common sense and the most minimal regard for humanity suggest that one who intentionally attracts small children to a place in or so close to a street or highway that there is danger of their being struck by passing traffic should be under a duty to maintain a lookout for such traffic and, if he observes or in the exercise of ordinary care should observe a vehicle approaching close enough to constitute an immediate hazard, to warn the children present in the immediate area of the attraction or make such other reasonable effort to prevent their being injured as may be necessary in the circumstances."

The facts in this case are clearly distinguishable from those in the cited opinions. Those cases, involving mobile vendors, do not, in our opinion, support a finding that the Tastee Freez owed a special duty of care toward Christal or its other young customers as they crossed the highway adjacent to the Tastee Freez.

It stretches the concept of duty too far to say that because the Tastee Freez sold ice cream and had other commodities or services attractive to children that, like the mobile ice cream vendors peddling their product on the streets, the Tastee Freez had a duty to watch adjacent roadways and intersections and to warn of or protect young customers from the dangers inherent in crossing the highway. Unlike the ice cream truck, the Tastee Freez does not conduct its business in the streets, but rather in a permanently placed building. There are no tinkling bells or music beckoning children into and along the streets, creating an urgency that purchases must be made quickly or be forever lost.

Under the circumstances presented here, we hold that the Tastee Freez did not owe Christal a duty of care as she attempted to cross the highway. The tragedy of this accident is both obvious and painful, but the emotion of a tragedy cannot serve as the predicate for imposing a duty where reasoned opinion dictates that no duty should lie. We conclude, therefore, that the trial court did not err in granting Tastee Freez's motion for summary judgment dismissal.

■ In their complaint, the Holters alleged that the City negligently failed to provide roadway markings, traffic lights, or other safety devices to allow pedestrians to safely cross the highway. They also alleged that the City negligently failed to prohibit parallel parking between the traveled portion of the highway and the Tastee Freez building. Sheyenne moved for a summary judgment dismissal, which was granted by the district court on the ground that the City was not in control of parking or safety regulations on the highway and, therefore, owed no duty of care with regard to these matters. We agree.

This issue is controlled by our recent decisions in *Yassin v. Schroeder*, 469 N.W.2d 368 (N.D.1991), and *Ebach v. Ralston*, 469 N.W.2d 801 (N.D.1991). In those decisions we held that under our state statutes the Department of Transportation (the Department) generally has control over state highways which pass through cities. Under Section 24–01–03, N.D.C.C., cities are given control over urban streets that connect with a state highway only in limited instances, none of which is relevant to this appeal.

In *Ebach, supra*, the plaintiff was injured when a truck ran a stoplight and struck his car at an intersection located on a state highway and a city street in Minot. The plaintiff sued the city, claiming that it negligently used a signal light instead of a stop sign at the intersection. We held that the state, not the city, had control over the use of traffic control signals on the state highway. Recognizing that our statutes allow the Department to enter cooperative agreements to delegate to cities a portion of the Department's jurisdiction and control, we reviewed the cooperative agreement between the Department and the city. We concluded, however, that the agreement did not grant the city power to alter the signal light without the Department's approval. We held that the city could not, therefore, be responsible for the plaintiff's injuries, which allegedly resulted from the use of a signal light at the intersection, and we affirmed the district court's summary judgment dismissal of the city as a defendant.

Our decision in *Yassin, supra*, was delivered on the same day as the *Ebach* decision. The plaintiff in *Yassin* was injured when he was struck by a car as he walked across 19th Avenue North in Fargo near the intersection of University Drive and 19th Avenue. There were no crosswalks or signals for pedestrian traffic at this intersection. The plaintiff filed an action against the city, alleging that it breached its duty to provide and maintain signs, signals, and crosswalks for pedestrian traffic to safely cross 19th Avenue North. The district court granted the city's motion for

summary judgment dismissal, on the ground that the city owed no duty to the plaintiff under these circumstances. We affirmed. The street was part of the state highway system, and we concluded that only the Department had statutory authority to alter the roadway of a connecting street. We stated that the city could control a traffic signal light or establish a pedestrian crosswalk on the state highway only where the Department, by cooperative agreement, had delegated its authority over the urban connecting street. We examined the cooperative agreements between the Department and the city, and we concluded that under those agreements the Department had reserved "the right to approve traffic signals, signs, signals, markings and all control measures necessary to establish crosswalks" on the street and that the city could not, therefore, establish a crosswalk without the Department's approval. *Yassin, supra,* 469 N.W.2d at 369. We further concluded that because the Department, not the city, was vested with control over the establishment of a crosswalk at the involved intersection, the city owed no duty to the plaintiff in that regard.

The cooperative agreement between the Department[1] and the City executed on April 28, 1954, is similar to the agreements we construed in *Yassin, supra,* and *Ebach, supra.* It provides that "all signs and traffic control devices and other protective structures" must be in conformity with the Manual on Uniform Traffic Control Devices as approved by the Department and must comply with any subsequent revisions of the Manual. The cooperative agreement also provides that the City must prohibit double and diagonal parking and that it will control parallel parking where allowed within the limits of the project "in a manner satisfactory to the Department...." We conclude that under the language of the cooperative agreement, the Department clearly retained its authority and control over parking and traffic signals on the roadway.

Our conclusion that the Department retained control is further supported by a letter written by the Department's chief engineer on October 27, 1975, to the Mayor of Sheyenne. The following relevant excerpts from that letter demonstrate the Department's exercise of control:

"The State Highway Department's inventory of traffic control devices indicates that your city has nonstandard overhead flashing beacons located at the U.S. 281 intersections of Richter Avenue and Sheyenne Avenue.

"In the interests of highway safety and uniformity of traffic control devices, this Department is proceeding with design plans to replace the overhead flashing beacons at the U.S. 281 and Richter Avenue intersection, and to remove the overhead flashing beacons at the U.S. 281 and Sheyenne Avenue intersection.

"We have limited the use of overhead flashing beacons to intersections which are potentially dangerous or which have an accident history. We do not classify the existing installation at U.S. 281 and Sheyenne Avenue in either of these categories."

The City apparently acquiesced, and the flashing beacon at the highway and Sheyenne Avenue intersection was removed by the Department.

We hold that at all times relevant to this case, the Department, not the City, had control over parking regulations and traffic safety markings and devices on the highway at the intersection of Sheyenne Avenue. Consequently, the City had no authority to act on those matters without Department approval, and, therefore, the City owed no duty to the Holters or their deceased child under these circumstances. We further conclude, therefore, that the district court did not err in granting the City's motion for summary judgment dismissal of the Holter's claims against it.

---

1. At the time this agreement was entered the responsible agency was designated as the North Dakota State Highway Department. Pursuant to Section 7, Chapter 72, S.L.1989, effective January 1, 1990, references to the Department of Transportation and the Director of the Department of Transportation have replaced references to the State Highway Department and the State Highway Commissioner in the Century Code.

In accordance with this opinion the summary judgment is affirmed.

LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, J., concurs in the result.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.