Amelia FERREIRA et al.

v.

William STRACK, Jr., et al.

No. 92–442–A.

Supreme Court of Rhode Island.

Jan. 14, 1994.

Cort Chappell, Chappell & Chappell, Newport, for plaintiff.

Joseph W. Baglini, Higgins & Slattery, Providence, Gregory Fater, Newport, Kevin M. Cain, Matthew F. Medeiros, Flanders & Medeiros, Paul A. Anderson, Anderson, Anderson & Zangari, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the plaintiffs, Amelia Ferreira (Amelia), Frank Ferreira (Frank), and Frank Bors on his own behalf and as executor of the estate of Florinda Amado–Bors (Florinda), from a summary judgment entered in the Superior

Court for the County of Newport in favor of the defendant, St. Joseph's Church of Newport, Rhode Island (church).[1] For the reasons stated herein, we affirm the entry of summary judgment. The following facts are undisputed.

On December 24, 1986, Amelia, Frank, and Florinda drove to the church to attend Midnight Mass. As was the practice of many parishioners, they parked their car in a small parking lot, which was owned by a third party, across the street from the church. The parking lot is separated from the church by Broadway, which is a public highway in the city of Newport.

After Mass ended, Amelia, Frank, and Florinda left the church and proceeded to cross Broadway to reach their car in the parking lot. While in the crosswalk, Amelia and Florinda were struck by a vehicle driven by William Strack, Jr. (Strack), who was later determined to be legally intoxicated. Florinda died within hours of the accident, and Amelia suffered severe and permanent injuries.

On prior occasions the church had contacted the Newport police department (police) and requested that a traffic officer be dispatched to control traffic on Broadway after various Masses. The police had dispatched traffic officers pursuant to the church's request on a so-called as-available basis. At no time did the church have a contract with the police to provide traffic officers. No representative of the church had contacted the police to request traffic control for Midnight Mass on December 24, 1986.

After the accident plaintiffs brought an action against the church for negligence. The plaintiffs proffered two theories for imposing liability upon the church. First, plaintiffs contend that the church owed them a duty to control traffic on Broadway, a public highway, because the church knew that a substantial number of parishioners would cross Broadway to reach the parking lot late at night after Mass ended. Second, plaintiffs argue in the alternative that even if no duty existed, the church voluntarily as-

sumed a duty to patrol traffic by its past conduct of occasionally contacting the police and requesting the assignment of traffic officers to Broadway. Under this line of reasoning, plaintiffs argue, parishioners relied upon the church's gratuitous assumption of a duty and the presence of such officers on Broadway. Therefore, the church had a duty to warn parishioners when a traffic officer was not present.

The church moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. In ruling on the motion, the trial justice considered the two theories put forth by plaintiffs and analyzed the church's liability under both premises-liability and general-negligence principles. The trial justice held that since plaintiffs' injuries occurred on Broadway, not on the church's property, the church had no duty under a premises-liability theory. Analyzing the church's liability under general-negligence principles and using the factors set forth in *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222 (R.I.1987), the trial justice held that the church did not have a duty, and furthermore, the proximate cause of plaintiffs' injuries was the willful and wanton act of Strack. Accordingly the trial justice granted the church's motion for summary judgment. Although our rationale is somewhat different from that of the trial justice, we do, however, affirm his conclusion.

◼ In reviewing the grant of a motion for summary judgment, this court applies the same standard as the trial justice below. *Barratt v. Burlingham*, 492 A.2d 1219, 1220 (R.I.1985). This standard requires the trial justice to view the pleadings, interrogatories, and affidavits in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact. *Steinberg v. State*, 427 A.2d 338, 340 (R.I. 1981). If there are no issues of material fact in dispute, the trial justice must then determine whether the moving party is entitled to judgment under applicable law. *Alfano v. Landers*, 585 A.2d 651, 652 (R.I.1991). In

---

1. The plaintiffs named seven defendants in their original complaint. The trial justice granted summary judgment in regard to the church and two other defendants. This appeal relates only to the granting of summary judgment in favor of the church.

deciding this question of law, the trial justice often finds it necessary to exercise his or her independent judgment and make findings as to preliminary facts. *Rodrigues v. Miriam Hospital,* 623 A.2d 456, 461 (R.I.1993). In this particular case the trial justice was required to determine whether, under applicable law, the church owed plaintiffs a duty. "If no such duty exist[ed], then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Barratt,* 492 A.2d at 1222.

■ A defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff. *Rodrigues,* 623 A.2d at 460; *Ryan v. State Department of Transportation,* 420 A.2d 841, 843 (R.I.1980). Whether a duty exists in a particular situation is a question of law to be decided by the court. *D'Ambra v. United States,* 114 R.I. 643, 649, 338 A.2d 524, 527 (1975).

■ In the past this court has recognized the difficulty of crafting a workable test to determine whether a duty exists in a particular case. *See, e.g., D'Ambra,* 114 R.I. at 648–49, 338 A.2d at 527 (observing that "the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated," quoting Prosser, *Torts* § 53 (4th ed. 1971)); *Radigan v. W.J. Halloran Co.,* 97 R.I. 122, 128, 196 A.2d 160, 163 (1963). This court has avoided "definitively commit[ting] itself to [a specific] * * * analytical approach" and has instead adopted an ad hoc approach of considering all relevant factors. *D'Ambra,* 114 R.I. at 649, 650–52, 338 A.2d at 527, 528; *see also Banks,* 522 A.2d at 1225;[2] *Radigan,* 97 R.I. at 128, 196 A.2d at 163; M. Jeffrey Monroe, Comment, *Annual Survey of Rhode Island Law: Landowners Not Required to Warn Those on Their Premises of Shallow Water if Diving Not a Foreseeable Action,* 22 Suff.

Univ.L.Rev. 531, 533 (1988) (analyzing *Banks* and noting that the test to determine duty "remains nebulous"). We recognize that the factors utilized in a particular case should reflect considerations of public policy, as well as notions of fairness. *See D'Ambra,* 114 R.I. at 648–49, 338 A.2d at 527; W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 53 at 358 (5th ed. 1984).

We begin our analysis with a review of various areas of negligence law tangentially related to the issue before us and from which we cull the factors to be applied in the case at hand.

■ Under the doctrine of premises liability a landowner has a duty to exercise reasonable care toward persons reasonably expected to be on his or her premises. *O'Brien v. State,* 555 A.2d 334, 338 (R.I. 1989). The rationale for the imposition of this duty rests firmly on the landowner's possession of the premises and his or her attendant right and obligation to control the premises. *See Jacobs v. Anderson Building Co.,* 459 N.W.2d 384, 386 (N.D.1990) (it is "'well settled that a duty of care will not ordinarily be imposed upon an occupier of land beyond the area over which he has possession and control'"); W. Page Keeton, § 57 at 386 ("person in possession of property ordinarily is in the best position to discover and control its dangers, and often is responsible for creating them in the first place"). We note that plaintiffs' injuries occurred on Broadway, a public highway, not on the church's property. Therefore, we agree with the trial justice that the church is not liable to plaintiffs under a premises-liability theory.

■ A second body of related law, which is a matter of first impression in Rhode Island,

---

**2.** Although we articulated five factors in *Banks v. Bowen's Landing Corp.,* 522 A.2d 1222 (R.I. 1987), those factors were case specific and should not be taken or construed to limit the scope of factors that we shall consider in future cases involving different factual situations. In *Banks* the plaintiff was injured when he became intoxicated, climbed over a railing, and dove into shallow water. In the case at hand plaintiffs were injured by a vehicle driven by a third party on a public highway. This factual situation is quite different from the *Banks* situation and necessitates the application of different factors. Furthermore, in *Banks* the plaintiffs asserted that the defendant had a duty to take certain precautionary measures on its own premises whereas in the instant case plaintiffs assert that the church had a duty to take certain measures on a public highway, which was not owned, possessed, or controlled by the church. This fact also necessitates the application of different factors.

involves the issue of whether a landowner has the duty to protect another from intentional criminal acts of third parties which take place on adjacent property or the public way. The generally accepted rule is that no such duty exists. *See Steinmetz v. Stockton City Chamber of Commerce,* 169 Cal.App.3d 1142, 1147, 214 Cal.Rptr. 405, 408 (1985) (no duty to protect plaintiff from injury by third party on land not owned, possessed, or controlled by landowner); *Buck v. Acme Markets, Inc.,* 53 Md.App. 151, 157, 456 A.2d 47, 51 (1982) (no duty on private landowner to protect one on public way); *Jones v. Williams,* 160 Mich.App. 681, 684, 408 N.W.2d 426, 428 (1987) (no duty to patron attacked off premises in adjacent parking lot); *Wofford v. Kennedy's 2nd St. Co.,* 649 S.W.2d 912, 914–15 (Mo.Ct.App.1983) (holding no duty to protect patron on public street adjacent to tavern); *Hutchins v. 1001 Fourth Ave. Associates,* 116 Wash.2d 217, 235–36, 802 P.2d 1360, 1370 (1991) (no duty to protect plaintiff from intentional criminal conduct of third parties on abutting land); *see also* E.L. Kellett, Annotation, *Private Person's Duty and Liability for Failure to Protect Another Against Criminal Attack by Third Person,* 10 A.L.R.3d 619, 626 (1966). The underlying rationale for this rule is threefold. First, a landowner has no right or ability to control adjacent property or the public way as such property is not owned or possessed by the landowner. *See, e.g., Steinmetz,* 169 Cal. App.3d at 1147, 214 Cal.Rptr. at 408. Second, the landowner has no control over the third party committing the criminal act and causing injury to another. *See, e.g., Waters v. New York City Housing Authority,* 69 N.Y.2d 225, 230, 513 N.Y.S.2d 356, 359, 505 N.E.2d 922, 924 (1987). Third, the "protection of the public in general is a duty allocated to the government." *Hutchins,* 116 Wash.2d at 236–37, 802 P.2d at 1371.

■ The third and final related area of law, which again is novel to Rhode Island,

involves the duty owed by a landowner to one who is struck by a vehicle while crossing an adjacent public way. The great weight of authority holds that no such duty exists. *See, e.g., Laufenberg v. Golab,* 108 Ill.App.3d 133, 136, 63 Ill.Dec. 875, 877–78, 438 N.E.2d 1238, 1240–41 (1982) (no duty of care owed to patron crossing public highway); *State v. Flanigan,* 489 N.E.2d 1216, 1218–19 (Ind.Ct. App.1986) (no duty owed to one on public way); *Holter v. City of Sheyenne,* 480 N.W.2d 736, 738 (N.D.1992) (landowner has no duty to patron struck on adjacent public way). The rationale for this rule embraces many of the previously discussed principles. First, a landowner does not own or possess an abutting public way and therefore has no right to control such a public way. *See, e.g., Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 433 (7th Cir.1978) (landowner has "no right of control over the public thoroughfare"). Second, the landowner has no control over the instrumentality causing the injury. *See, e.g., Holter,* 480 N.W.2d at 738. Third, the protection of the public while on a public way is a duty allocated to the government, not to private individuals who own land abutting public ways. *See, e.g., Litz v. Hutzler Bros. Co.,* 20 Md.App. 115, 123, 314 A.2d 693, 697 (1974) (patrolling of public way is proper subject for police action).

■ In light of the above principles we now turn to the specific issue before us, which is whether an owner of premises abutting a public way has a duty to control traffic on a public way.[3] We hold that an abutting landowner is under no such duty. In so holding, we rely upon the following factors.

First and most importantly, the duty to control traffic has traditionally rested squarely with the government. Historically the control of traffic flow on public ways has been a function carried on by the government in discharge of its obligation for the

---

3. The fact that defendant is a church has no bearing upon our analysis. As we have recognized in past decisions, the liability of a church for personal injuries to its parishioners is determined in the same manner as that of a private landowner. *See, e.g., Pankiw v. Polish National Catholic Church of Our Savior,* 493 A.2d 819 (R.I.1985); *Dodge v. Parish of the Church of the*

*Transfiguration,* 106 R.I. 342, 259 A.2d 843 (1969); *DeMello v. St. Thomas the Apostle Church Corp. of Warren,* 91 R.I. 476, 165 A.2d 500 (1960). Furthermore, the rule we enunciate herein is applicable to individual landowners and commercial establishments as well as to religious and nonprofit corporations.

public health, safety, and welfare. Legislative recognition of this traditional governmental function appears in various statutes. Most notably, G.L.1956 (1993 Reenactment) § 42–28–3 provides that the Rhode Island State Police have the responsibility of "[c]ontrolling traffic and maintaining safety on the highways." *See also* G.L.1956 (1982 Reenactment) § 31–12–12(2), as amended by P.L. 1983, ch. 249, § 1 (local authorities may exercise their police power to "[r]egulate[ ] traffic by means of police officers or traffic control signals"); G.L.1956 (1982 Reenactment) § 31–13–2(a) (authorizing state traffic commission to place and maintain traffic-control devices upon state highways to "regulate, warn, or guide traffic"); § 31–13–3 (authorizing cities and towns to place and maintain traffic-control devices upon local highways to "regulate, warn or guide traffic"). Furthermore, § 31–13–10 prohibits private individuals from engaging in traffic control of a public way by placing or maintaining any traffic "sign, signal, marking or device * * * which attempts to direct the movement of traffic." Various decisions also reflect the notion that the control of traffic is a governmental function. *See Nugent v. City of East Providence,* 103 R.I. 518, 521, 238 A.2d 758, 760 (1968) ("[t]he State has sovereign and absolute jurisdiction and control of the roads, streets and highways within its borders," quoting *Hackensack Water Co. v. Ruta,* 3 N.J. 139, 146, 69 A.2d 321, 324 (1949)); *State v. Berberian,* 100 R.I. 274, 277–78, 214 A.2d 465, 467 (1965); *State v. Goldberg,* 61 R.I. 461, 467–68, 1 A.2d 101, 104 (1938); *see also City of El Segundo v. Bright,* 219 Cal.App.3d 1372, 1377, 269 Cal.Rptr. 1, 3 (1990) (interpreting traffic-control statutes similar to Rhode Island's and holding that duty to " 'control public streets and regulate traffic lies with the state' "). Collectively these statutes and cases indicate that the control and regulation of traffic is a duty allocated to the government, not to private individuals. This factor weighs heavily against the imposition of a duty on an abutting landowner to control traffic.

Second, the church had no control over the property on which the injury occurred. The facts clearly establish that plaintiffs' injuries occurred not on the church's premises but on Broadway, an abutting public highway. Because one may not control land owned or possessed by another, the church had no right of control over Broadway, which is a public way. *See Jacobs,* 459 N.W.2d at 386 ("[t]here can be no duty to make an area safe if the [person] has no authority to carry out that duty"). This factor also strongly weighs against imposing a duty on an abutting landowner.

▮ The plaintiffs implicitly recognize that the church lacks control over Broadway by asserting that the church "could have" requested that local authorities assign an officer to control traffic on Broadway that evening. The fact that a landowner may request public traffic control on a public street does not vest in that landowner the personal right or obligation to control such a public way. Consequently the church's request for public traffic control would not confer on the church any authority or obligation to control a public highway such as Broadway.

Third, the church had no control over the instrumentality causing the injury. The instrumentality causing injury in this case was a vehicle driven by Strack. The church had no control over Strack, the alcohol he consumed, or the vehicle he drove.

Fourth, we express concern that if we were to impose a duty upon a landowner to patrol traffic on public ways, the "line which would cut off the landowner's liability [then] becomes nearly impossible to draw." *Wofford,* 649 S.W.2d at 914.

▮ Fifth, the expense of traffic control should be borne by the public at large and not by individual landowners abutting public ways. *See Hutchins,* 116 Wash.2d at 235–37, 802 P.2d at 1370–71.

·Relying upon the foregoing principles, we hold that the church did not owe plaintiffs, who were injured on a public way by an instrumentality not controlled by the church, a duty to control traffic. Traffic control is inherently and traditionally a governmental function and not a burden to be placed upon the private citizenry. Having no duty itself to control traffic, neither would the church

have a duty to contact the police and request the stationing of a traffic officer on Broadway.

The plaintiffs argue that because the church did not provide adequate on-site parking for parishioners, the church should have foreseen that a substantial number of parishioners would park in the nearby lot that was separated from the church by a public highway, and would have to cross that public highway to reach their vehicles in the dark late at night after Mass. Therefore, plaintiffs argue, the church had a duty to patrol traffic to ensure that parishioners could safely cross the highway to reach their vehicles in the nearby lot. We disagree. Neither the lack of adequate parking nor the foreseeability that many parishioners would park in the nearby lot requiring them to cross Broadway warrants the imposition of a duty to control traffic on a public highway.

Under very similar facts an identical argument concerning the lack of adequate parking was made to the California Court of Appeals in *Steinmetz, supra.* In that case, the plaintiff was attacked in an adjacent parking lot after leaving an event held on premises occupied by the local chamber of commerce. In dismissing the plaintiff's argument, the California court recognized that despite the fact that injury on the adjacent premises may have been foreseeable, a landowner had neither the ability nor the right to control adjacent premises. By analogy the California court stated that the

> "instant case cannot be distinguished from that of a movie theater showing the latest academy award winning movie, or a department store holding its annual clearance sale, neither of which is able to afford sufficient parking for the number of invitees seeking to enter the premises. We are aware of no obligation upon the movie theater or department store owner to

* * * patrol those streets for the safety of its invitees. Nor can the instant situation be distinguished from that of a homeowner whose business guests must park on city streets because there is not sufficient parking on the premises." *Steinmetz,* 169 Cal.App.3d at 1147, 214 Cal.Rptr. at 408. We agree, noting that despite any foreseeability of injury on a public way,[4] the failure to provide sufficient parking on premises does not give rise to a duty to patrol traffic. Nor does it magically overcome the difficulties inherent in imposing such a duty, namely that a landowner neither owns nor controls a public way. *Id.* at 1147, 214 Cal.Rptr. at 409 (recognizing futility of attempting to impose this duty).

Alternatively, plaintiffs argue that even if the church did not have a duty to patrol traffic, the church assumed such a duty by requesting traffic control by the police on prior occasions. Once the church assumed that duty, plaintiffs argue, parishioners relied upon the church to contact officials in the future, and therefore, the church had a duty to warn parishioners when the church failed to perform its duty on other occasions. We disagree.

The same principles that militate against the duty to control traffic on public highways would also preclude the gratuitous assumption of such a duty. Indeed our statutory framework, such as § 31–13–10, and our cases, such as *Nugent v. City of East Providence,* 103 R.I. 518, 238 A.2d 758 (1968), strongly indicate that any attempt on the part of a private person gratuitously to assume control of a public highway would be contra to public policy. Consequently, whether or not the church had followed a practice of requesting aid from the police, however sporadically or frequently, no such duty could be assumed by an abutting landowner. As suggested in *Steinmetz, supra,*

---

4. This court has consistently recognized that foreseeability of injury does not, in and of itself, give rise to a duty. *D'Ambra v. United States,* 114 R.I. 643, 650–51, 338 A.2d 524, 528 (1975) ("foreseeability is responsive only to the moral aspects of the issue"). Other courts have noted that "[t]he question is not simply whether a[n] * * * event is foreseeable, but whether a *duty* exists to take measures to guard against it."

*Goldberg v. Housing Authority of Newark,* 38 N.J. 578, 583, 186 A.2d 291, 293 (1962). Accordingly, the element of foreseeability must be considered in conjunction with other relevant factors. *See* Leon Green, *The Duty Problem in Negligence Cases,* 28 Colum.L.Rev. 1014, 1034 (1928) (indicating that each relevant factor must be considered and satisfied). In no circumstances can foreseeability alone create a duty to act.

an abutting landowner, such as a theater, a department store, a restaurant, or any other entity that may from time to time attract large numbers of patrons may have a significant interest in the condition of traffic on abutting highways. However, this interest cannot be transformed into a duty of control by the landowner's requests to municipal or other governmental authorities to perform duties that are wholly governmental in nature.

Because the church neither had a duty nor could assume a duty to control traffic, it follows that the church would likewise have no duty to warn parishioners of the absence of traffic-control officers.

For the reasons stated, we affirm the summary judgment entered in the Superior Court. The plaintiffs' appeal is denied and dismissed, and the papers of this case are remanded to the Superior Court.

MURRAY, J., did not participate.