**Supreme Court**

No. 2012-169-Appeal.
(PC 07-4018)

James W. Brown et al.                :

v.                :

Elmer Stanley et al.                :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

James W. Brown et al.               :

            v.                      :

Elmer Stanley et al.               :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This is an action for contribution among alleged joint tortfeasors.  Mary Cummings, a participant in a charitable fundraising walk for the benefit of the defendants, Project Hope/Projecto Esperanza, Inc. (Project Hope) and the Diocesan Bureau of Social Services (Diocesan Bureau), suffered personal injuries when she was struck by a truck operated by the plaintiff, James W. Brown[1] (Brown), an employee of the plaintiff Bluelinx Corporation (plaintiff or Bluelinx).  She subsequently settled all claims against all the defendants.  In this appeal, Bluelinx seeks review of a Superior Court order granting Project Hope and the Diocesan Bureau's renewed motion for judgment as a matter of law and conditionally granting a motion for a new trial.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

The peregrination of this case commenced on March 25, 2005—Good Friday—when approximately 200 walkers arrived at Notre Dame Church in Central Falls, Rhode Island, to participate in the annual Good Friday Walk sponsored on behalf of Project Hope and the

---

[1] Although the case caption still contains his name, James W. Brown no longer is a party to the proceedings following a voluntary dismissal, without prejudice, entered on June 10, 2010.

Diocesan Bureau. Upon arriving, the participants entered through the rear of the church and registered for the walk in the basement. The walkers then proceeded upstairs for a brief prayer service in the church. Next, they exited through the front of the church, descended the steps, and made their way across Broad Street to Sacred Heart Avenue. The walkers then proceeded along a predetermined route through Central Falls, Pawtucket, Lincoln, and Cumberland.

In addition to the walkers, staff members and volunteers were present to help facilitate the Good Friday Walk, including Elmer Stanley (Stanley), the executive director of Project Hope, Kerry O'Connell (O'Connell), Project Hope's parish outreach coordinator, and Roselyn Vredenburgh (Vredenburgh), a long-time employee of Project Hope. As the walkers exited the church, O'Connell positioned herself in the middle of Broad Street in order to stop traffic as the walkers proceeded to cross the street. When the entire group of walkers had crossed the thoroughfare, O'Connell noticed Mary Cummings (Cummings) standing on the church steps. According to O'Connell, it wasn't clear whether Cummings was a participant in the walk; however, Stanley—who was standing on the sidewalk outside the church—indicated to O'Connell that he would assist Cummings in crossing the street. By then, the group of walkers had crossed Broad Street; O'Connell waved the traffic on and returned to the sidewalk. According to James W. Brown (Brown), the operator of an eighteen-wheel tractor trailer who had stopped a block before the church at a traffic light, the light changed approximately two to four times before all the participants made their way across Broad Street and the traffic began to move.

Brown testified that he drove the Bluelinx tractor trailer forward on Broad Street and activated the truck's turn signal, intending to turn left onto Sacred Heart Avenue. As Brown passed the church on his right, he veered right in order to position the cab of the truck at an angle

to facilitate the left turn. Because the traffic had been stopped for so long, oncoming traffic was heavy and Brown was forced to wait one to two minutes before he was able to negotiate the turn.

Meanwhile, Cummings was making her way down the church steps when Stanley approached her. Stanley testified that Cummings was a petite elderly woman, about five feet tall, who was using a cane as she slowly descended the stairs. When Stanley asked Cummings if he could assist her across the street, Cummings retorted, "Are you talking to me? Are you talking to me?" When Stanley indicated that he was, Cummings responded, "I don't need any help." Nonetheless, Stanley asked again whether Cummings needed help, to which she emphatically replied, "No. They will stop for me." Sensing that he had offended her, Stanley apologized to Cummings and continued toward the church entrance.

As he climbed the stairs, Stanley stopped and turned to watch Cummings reach the base of the stairs and make her way across the sidewalk. When Cummings approached the curb, she waved her hand at Brown's tractor trailer, which was then stopped waiting to turn left. Stanley then resumed his climb up the stairs when a friend asked him, "Is she going to make it?" Stanley then turned once more and saw Cummings walking "right up against the side" of Brown's tractor trailer—which was still stopped—and replied "yes." Stanley was nearing the church entrance when he heard Cummings scream. According to Brown, a driver approaching from the opposite direction had motioned for Brown to proceed, and he began turning left onto Sacred Heart Avenue when he heard what sounded like metal hitting the pavement. Brown immediately stopped the truck, exited the cab and walked around to the front passenger side where he discovered Cummings pinned behind the front wheel. Brown later testified that he had not seen her.

Although Cummings was grievously injured, no suit was filed on her behalf. Rather, on

July 13, 2007, Cummings accepted $1,450,000 in full settlement and signed a release of all claims against Brown, Bluelinx, Project Hope, the Roman Catholic Diocese of Providence, Stanley, and O'Connell. This release indicated that all payments were made by or on behalf of Bluelinx and its driver, Brown, "who have discharged the common liability of the additional joint tortfeasors." The release also indicated that "[a]ll parties to this release acknowledge the intent of [Bluelinx and Brown] to proceed against all other joint tortfeasors named or released by reference under the terms of this document to the extent of their pro rata share of this settlement."

On August 3, 2007, Bluelinx and Brown filed suit against Project Hope, the Diocesan Bureau, and Stanley (collectively defendants) seeking contribution toward the settlement.[2] By way of answer, defendants denied liability and asserted, as an affirmative defense, that no duty of care or breach of such duty were present in this case. The defendants later filed motions for summary judgment, in which they argued that they were under no duty to protect Cummings from plaintiff's tortious acts while she was on a public highway. The defendants also argued that no duty existed under principles of premises liability, because Cummings was not injured while on defendants' property.[3] Finally, Stanley argued that plaintiff's claims against him should be dismissed because he was at all times acting within the scope of his employment with Project Hope.

---

[2] In the original complaint, Brown was the only named plaintiff, and Stanley, Project Hope, and the Roman Catholic Bishop of Providence were named defendants. A first amended complaint was filed four days later on August 7, 2007, naming the Diocesan Bureau as a defendant in place of the bishop. On April 18, 2008, a second amended complaint was filed naming Brown and Bluelinx as plaintiffs, and Stanley, Project Hope, and the Diocesan Bureau as defendants. As noted previously, Brown was voluntarily dismissed as a party plaintiff on June 10, 2010.

[3] In its Superior Court papers filed in opposition to summary judgment, Bluelinx conceded that premises liability did not apply to the facts of the case.

A Superior Court justice heard the motions on February 22, 2011, and denied summary judgment for Project Hope and the Diocesan Bureau, finding that the facts of this case established a duty to exercise reasonable care for the safety of the walkers. The trial justice did, however, grant summary judgment "as to Elmer Stanley in his individual capacity," finding that "all [parties] seem to agree that he was there in his capacity as Executive Director of Project Hope." An order entered in favor of Stanley, who then moved for entry of separate and final judgment in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure. Over plaintiff's objection, final judgment was entered in favor of Stanley on March 24, 2011.[4]

On December 5, 2011, a jury trial commenced; as part of its case-in-chief, Bluelinx presented Brown and also called Stanley as an adverse witness. The deposition testimony of Vredenburgh was read to the jury, and O'Connell testified by way of a video deposition. After plaintiff rested, counsel for defendants indicated that they wished to argue a motion, and also read certain stipulated facts into the record.[5] The stipulated facts established that, if William Cummings—the brother of Mary Cummings—had testified, his testimony would establish that his sister had participated in the Good Friday Walk for many years, and that before the incident, she customarily would walk—weather permitting—about two miles per day, and regularly swim for about an hour a day at the local pool. The defense then rested and pressed its motion for judgment as a matter of law.

---

[4] Bluelinx filed a timely notice of appeal concerning this judgment; however, it later requested that the Court stay the appeal pending resolution of the remaining claims. We granted the stay and remanded the case to the Superior Court. The appeal concerning the grant of summary judgment and entry of final judgment in favor of Stanley, docketed as No. 2011-177-A., was also heard by this Court, but will be decided in a separate order.

[5] Prior to reading the stipulated facts, defense counsel stated that there was a motion, which he understood the court was going to defer ruling on; the trial justice agreed. Although not specifically delineated, we assume the motion was for judgment as a matter of law.

After hearing both parties' arguments, the trial justice declared that he would "reluctantly let the case go to the jury," and denied the motion. He indicated, however, that based on the facts of the case, "the issue of duty [was] of great concern" to him, and he questioned whether this Court's holding in Ferreira v. Strack, 636 A.2d 682 (R.I. 1994), was controlling. The trial justice later instructed the jury that "the defendants owed a duty to exercise reasonable care for the safety of persons participating in the walk." The jury was asked to determine whether any of the defendants were "guilty of negligence which was, in part, the proximate cause of the injuries suffered by Ms. Cummings." The jury answered this question in the affirmative, and apportioned defendants' fault at twenty percent.

The defendants subsequently filed a renewed motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure and also moved, in the alternative, for a new trial. The trial justice granted the renewed Rule 50 motion, finding that "there was not a legally sufficient basis for the jury's verdict." The trial justice further stated that, "if any duty existed, it ended" when Cummings definitively refused Stanley's offer to help her cross the street. Moreover, the trial justice rejected plaintiff's "effort to create a duty" based on Cummings' age and infirmity, finding the contention to be inconsistent with the uncontradicted evidence—stipulated to by the parties—that Cummings had participated in the Good Friday Walk for many years, and that she swam and walked regularly before the incident. The trial justice declared that there was an insufficient legal basis for the jury to find defendants negligent, and granted the motion for judgment as a matter of law.[6] The plaintiff filed a

---

[6] The trial justice also concluded that, "for the same reasons," the jury's verdict was contrary to the evidence and weight thereof, and conditionally granted defendants' motion for a new trial. However, based on our conclusion that defendants did not owe a duty of care to Cummings under the facts of this case, we need not pass upon the trial justice's conditional grant of a new trial. See Economou v. Valley Gas Co., 112 R.I. 514, 522 n.2, 312 A.2d 581, 586 n.2 (1973)

timely appeal.

## Standard of Review

"Our review of a trial justice's decision on a motion for judgment as a matter of law is <u>de novo</u>." <u>McGarry v. Pielech</u>, 47 A.3d 271, 279 (R.I. 2012) (quoting <u>Medeiros v. Sitrin</u>, 984 A.2d 620, 625 (R.I. 2009)). "This Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party.'" <u>Id.</u> (quoting <u>Oliveira v. Jacobson</u>, 846 A.2d 822, 829 (R.I. 2004)). "Judgment as a matter of law is appropriate 'if, after viewing the evidence in the light most favorable to the nonmoving party, [the trial justice] determines that the nonmoving party has not presented legally sufficient evidence to allow the trier of fact to arrive at a verdict in his favor.'" <u>Id.</u> at 280 (quoting <u>Gianquitti v. Atwood Medical Associates, Ltd.</u>, 973 A.2d 580, 590 (R.I. 2009)).

## Discussion

On appeal, plaintiff argues that the trial justice erred in granting defendants' motion for judgment as a matter of law, contending that although Project Hope and the Diocesan Bureau initially may not have been under a duty to provide for the safety of the marchers, defendants assumed such a duty when they undertook efforts to protect the participants—including Cummings—by controlling traffic on Broad Street. The plaintiff further argues that the suggestion that this duty was extinguished when Cummings refused Stanley's offer of assistance is "meritless," and instead created a question for the jury as to whether O'Connell's act of

_____

(noting that, pursuant to Rule 50(c)(1) of the Superior Court Rules of Civil Procedure, the conditional grant of a new trial becomes operative only if the trial justice's grant of judgment as a matter of law is reversed on appeal).

waving traffic on was a breach of a duty and proximate cause of Cummings' injuries. After a careful review of the record in this case, we reject plaintiff's arguments.

"To properly set forth 'a claim for negligence, a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" Willis v. Omar, 954 A.2d 126, 129 (R.I. 2008) (quoting Mills v. State Sales, Inc., 824 A.2d 461, 467 (R.I. 2003)). It is axiomatic, however, that "[a] defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff." Ferreira, 636 A.2d at 685 (citing Rodrigues v. Miriam Hospital, 623 A.2d 456, 460 (R.I. 1993)).

It is well settled that "[w]hether a defendant is under a legal duty in a given case is a question of law." Willis, 954 A.2d at 129 (citing Martin v. Marciano, 871 A.2d 911, 915 (R.I. 2005)). However, "[b]ecause there is no set formula for finding a legal duty, such a determination must be made on a case-by-case basis." Id. at 130 (citing Martin, 871 A.2d at 915). We therefore conduct this analysis by examining "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." Gushlaw v. Milner, 42 A.3d 1245, 1252 (R.I. 2012) (quoting Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003)).

When he granted defendants' motion for judgment as a matter of law, the trial justice found that defendants owed no duty to Cummings, based on this Court's opinion in Ferreira, 636 A.2d at 686. In Ferreira, certain parishioners brought a negligence action against a church after they were struck by an intoxicated driver while crossing a public street to reach a parking lot following Midnight Mass. Id. at 684. The plaintiffs argued that the church was under a duty of care to control traffic on the public way because the church knew that a large number of

- 8 -

parishioners would cross the street to access a parking lot—owned by a third party—late at night, after Mass had ended. Id. at 684. In Ferreira, this Court adopted—as a matter of first impression—the rule that a landowner does not owe a duty to an individual who is struck while crossing an adjacent public way. Id. at 686. We reasoned that this rule embraced three sound principles: first, that a landowner does not own or possess an abutting public way, and therefore has no right to control that public way; second, that a landowner has no control over the instrumentality causing the injury; and lastly, that protection of the public while on a public way is allocated to the government, not to private individuals who own abutting land. Id.

Based on the facts in Ferreira, this Court held that the church had no duty to control traffic on the public roadway abutting the church so as to be liable to the injured parishioners. Ferreira, 636 A.2d at 686. In support of this holding, we annunciated five principles: (1) that our statutes and case law clearly show that the "control and regulation of traffic is a duty allocated to the government, not to private individuals"; (2) that the church had no control over the property on which the injury occurred, regardless of whether the church had ever requested traffic control for the public way; (3) the church had no control over the instrumentality causing the injury; (4) if a duty were imposed upon landowners to patrol traffic on public ways, the "line which would cut off the landowner's liability [then] becomes nearly impossible to draw"; and (5) that the public at large, rather than an individual landowner, should bear the expense of traffic control. Id. at 686-87 (internal quotes omitted).

The plaintiffs in Ferreira also advanced the alternative argument that, even if a duty did not exist, the church voluntarily assumed a duty to control traffic through its past conduct of contacting the police and requesting that officers be assigned to control traffic outside the church. Ferreira, 636 A.2d at 684. This Court rejected that argument, concluding that "[t]he

- 9 -

same principles that militated against the duty to control traffic on public highways would also preclude the gratuitous assumption of such a duty." Id. at 688. We explained that although landowners—such as a theater or department store, for example—may on occasion attract a large number of patrons and therefore have a significant interest in the condition of traffic on abutting public ways, "this interest cannot be transformed into a duty of control by the landowner's requests to municipal or other governmental authorities to perform duties that are wholly governmental in nature." Id. at 689. Accordingly, this Court stated that an abutting landowner could not gratuitously assume a duty to control traffic on a public way, regardless of whether that landowner had—however frequently or infrequently—requested aid in controlling traffic in the past.

We deem our holding in Ferreira controlling in this case. The plaintiff attempts to distinguish Ferreira, however, by contending that, unlike the case at bar, the church in Ferreira did nothing to ensure the safety of the parishioners as they crossed the street after Midnight Mass. In this case, plaintiff argues, defendants assumed a duty to provide for the safety of the Good Friday Walk participants—including Cummings—by taking affirmative steps to provide for the safety of the marchers by controlling traffic on Broad Street. The plaintiff cites to Izen v. Winoker, 589 A.2d 824, 828 (R.I. 1991), in support of the contention that once defendants assumed a duty by controlling traffic for the safety of all the walkers, defendants were then responsible for carrying out that duty with reasonable care.

In Izen, we acknowledged that "one who assumes a duty to perform an act must do so with reasonable care whether or not that person had an obligation to perform the act or repairs prior to assuming the duty." Izen, 589 A.2d at 828 (citing Therrien v. First National Stores, Inc., 63 R.I. 44, 51, 6 A.2d 731, 734 (1939)). More recently, in Gushlaw, 42 A.3d at 1259-60, we

- 10 -

reaffirmed this principle, and specifically refused to adopt the more "relaxed" standard set forth in § 324A of the Restatement (Second) Torts (1965).[7] In so doing, we explained that the determination of whether or not a party voluntarily assumed a duty should continue to be reviewed "through the lens of our existing case law." Gushlaw, 42 A.3d at 1260.

Furthermore, even if a duty purportedly arose when O'Connell took it upon herself to stop the traffic—a duty which we hold did not arise—it was extinguished when the walkers safely crossed Broad Street and traffic resumed. Additionally, because Cummings flatly and unequivocally rejected all offers of assistance, no duty exists under any circumstance in this case.

We also reject plaintiff's argument that defendants exerted control over Brown's tractor trailer when O'Connell stopped traffic and then waved it forward. The record reflects that Cummings was slowly descending the church steps and nowhere near the street when O'Connell waved traffic on and returned to the sidewalk. Brown's tractor trailer already was stopped and awaiting an opportunity to turn left onto Sacred Heart Avenue when Cummings stepped off the curb and entered the street; Cummings was struck after she had partially crossed Broad Street. Any purported control defendants had over the tractor trailer clearly ended when O'Connell waved traffic on and traffic resumed.

---

[7] The Restatement (Second) Torts § 324A at 142 (1965), which we decline to adopt in the context of this appeal, provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> > "(a) his failure to exercise reasonable care increases the risk of such harm, or
> > "(b) he has undertaken to perform a duty owed by the other to the third person, or
> > "(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Accordingly, the arguments advanced by the plaintiff do not create questions of fact for the jury as the plaintiff contends, as it is well settled that in the absence of a legal duty, the plaintiff's claims must fail as a matter of law. Ouch v. Khea, 963 A.2d 630, 633 (R.I. 2009) ("Only when a party properly overcomes the duty hurdle in a negligence action is he or she entitled to a factual determination on each of the remaining elements: breach, causation, and damages.") (citing Selwyn v. Ward, 879 A.2d 882, 886 (R.I. 2005)); see also Gushlaw, 42 A.3d at 1252 ("Even in the face of tragic consequences, liability for alleged negligent conduct cannot attach to a defendant absent a recognized duty of care.").

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court granting the defendants' renewed motion for judgment as a matter of law. Furthermore, because we conclude that, as a matter of law, there was no cognizable duty of care owed by the defendants in this case, we need not address that portion of the plaintiff's appeal pertaining to the trial justice's conditional grant of a new trial. The papers in this case may be returned to the Superior Court, with directions to enter judgment on behalf of the defendants.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**       James W. Brown et al. v. Elmer Stanley et al.

**CASE NO:**              No. 2012-169-Appeal.
                         (PC 07-4018)

**COURT:**               Supreme Court

**DATE OPINION FILED:**  February 18, 2014

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                         Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

                         For Plaintiff:  Bruce G. Tucker, Esq.

                         For Defendant:  C. Russell Bengtson, Esq.