Kimberly S. Phelps et al.            :

                    v.                :

Gregory Hebert et al.                :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2012-315-Appeal.
(KC 09-416)

Kimberly S. Phelps et al.      :

v.      :

Gregory Hebert et al.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case arises out of claims of negligence and wrongful death brought by the plaintiffs, Kimberly S. Phelps and Thomas Phelps (collectively, plaintiffs), individually and as co-administrators of the Estate of Ashley R. Phelps, alleging that two named defendants, Leo R. Pelletier and Susan Pelletier (collectively, defendants or Pelletiers), negligently allowed a guest at their son's graduation party to operate an all-terrain vehicle (ATV) in a reckless manner, resulting in the death of the plaintiffs' daughter, Ashley. On appeal, the plaintiffs argue that a Superior Court justice erred in granting summary judgment in favor of the defendants.  This case came before the Supreme Court on April 2, 2014, pursuant to an order directing the parties to appear and show cause why the issues presented in this appeal should not be summarily decided.  After a thorough review of the arguments and the memoranda submitted by the parties, we are of the opinion that cause has not been shown and thus the appeal may be decided at this time.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

The tragic events giving rise to this case began on June 23, 2007, when the Pelletiers hosted a party at their home, located at 51 Sharon Drive in Coventry, Rhode Island, to celebrate the college graduation of their son, Ross. Approximately eighty people were invited to the party, including Gregory Hebert (Hebert), Ross's friend from high school. Although the party was an all-day event, Hebert arrived in the afternoon, with a case of beer as a gift for Ross. According to Hebert, during his time at the party he consumed "no more than two beers," and did not drink any of the alcoholic beverages that were supplied by the Pelletiers.[1]

Later that evening, Hebert left the party with Michael S. Vingi (Vingi) in order to retrieve a recently purchased ATV from his home. Vingi drove Hebert's pickup truck to the house, where Hebert retrieved the ATV from a locked shed on the property. Hebert then drove the ATV "a mile or two" back to the party, with Vingi following in the pickup truck. Once they arrived at the Pelletiers' house, Hebert left the ATV in the front yard—near other ATVs in the driveway—and proceeded to rejoin the party in the backyard. Rosalyn Smith (Smith), a guest at the party, asked Hebert for a ride on his ATV. Despite the fact that the ATV was designed for only one person, Hebert agreed. Before embarking, Hebert asked Smith if she wanted to wear a helmet; Smith declined and Hebert drove the ATV—with Smith on the back—down Sharon Drive, where they stopped to talk to Smith's brother, who lived at the end of the street. Hebert and Smith then returned to the Pelletiers' house on the ATV.

At approximately 10:15 p.m., Ashley Phelps (Ashley or decedent) requested a ride on Hebert's ATV. Hebert offered Ashley a helmet—which she declined—and asked her to dispose of her drink and cigarette before climbing on the vehicle. With Ashley on the back of the ATV,

---

[1] Underage drinking does not play a role in this tragedy.

Hebert proceeded down the driveway toward Mrs. Pelletier. According to Hebert, Mrs. Pelletier moved a party cooler in order for Hebert to maneuver the ATV and gain access to the street. Although Hebert stated that he could not recall if Mrs. Pelletier said anything to him at that point, Mrs. Pelletier stated in her deposition testimony that she did not move the cooler to allow the ATV to pass; however, she testified that she told Hebert that the party was neither the "time [n]or place" for ATV rides, to which Ashley replied that Hebert was "a good driver." It is undisputed that Hebert then left the Pelletiers' property and traveled down the street, where he crashed the ATV, causing it to roll over and eject Ashley onto the driveway at 39 Sharon Drive. After the accident, Hebert fled on the ATV, abandoning a grievously injured Ashley, who suffered traumatic brain injuries.[2] Ashley died nine days later.

On October 29, 2007, plaintiffs filed a wrongful death action against Hebert, and in an amended complaint on June 18, 2010, plaintiffs added the Pelletiers as defendants, including counts of negligence and wrongful death against them.[3] The plaintiffs alleged that defendants owed a duty of care to provide for a safe environment for the guests on their property, including the decedent, who attended the graduation party at their home. The plaintiffs further argued that the Pelletiers breached this duty of care by allowing a dangerous condition—namely, Hebert's ATV—to be on their property and to be operated in a reckless manner.

The Pelletiers filed a motion for summary judgment that was heard by a justice of the

---

[2] Hebert was later charged with leaving the scene of an accident, death resulting. He subsequently pled nolo contendere to driving to endanger, death resulting, and was sentenced to a two-year prison term at the Adult Correctional Institutions.

[3] Michael Vingi, Gregory's father Bruce Hebert, and GE Money Bank—which financed the ATV—were also named as defendants in the amended complaint. Final judgments were subsequently entered in favor of Bruce Hebert and Michael Vingi after their separate motions for summary judgment were granted. The plaintiffs' claims against Gregory Hebert and GE Money Bank remain pending at the time of this appeal.

Superior Court on March 12, 2012. At this hearing, defense counsel argued that the Pelletiers had no duty to the decedent as social hosts, nor did any special relationship exist between the Pelletiers and Ashley that would impose upon them a duty to protect her from harm caused by a third party. In response, plaintiffs' counsel argued that the claims against the Pelletiers were not based upon social host liability, but rather upon principles of premises liability. Specifically, plaintiffs argued that the Pelletiers allowed a dangerous instrumentality to be used on the premises, which resulted in injury to the decedent. Concluding that no duty arose under principles of premises liability, the Superior Court justice stated, "I cannot see extending the duty of a property owner to the situation where a person is injured off the property as a result of something other than a defect in the property. * * * [A]s a matter of law, I can't find the [decedent] getting on the vehicle as a defect in the property that gives rise to the duty." The trial justice granted summary judgment in favor of the Pelletiers. Final judgment entered in favor of the Pelletiers, and plaintiffs timely appealed.

**Standard of Review**

This Court reviews a trial justice's grant of a motion for summary judgment by undertaking a de novo review. Willis v. Omar, 954 A.2d 126, 129 (R.I. 2008) (citing United Lending Corp. v. City of Providence, 827 A.2d 626, 631 (R.I. 2003)). In so doing, this Court reviews the evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party. Martin v. Marciano, 871 A.2d 911, 914-15 (R.I. 2005) (citing Santiago v. First Student, Inc., 839 A.2d 550, 552 (R.I. 2004)). We will affirm a grant of summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Id. at

- 4 -

915 (quoting <u>Wright v. Zielinski</u>, 824 A.2d 494, 497 (R.I. 2003)).

## Analysis

On appeal, plaintiffs argue that the Superior Court justice erred in his conclusion that the Pelletiers did not owe a duty of care to the decedent, and cite <u>Banks v. Bowen's Landing Corp.</u>, 522 A.2d 1222, 1225 (R.I. 1987), for the proposition that a duty of care should have been recognized based on the facts of this case. Although plaintiffs contend that principles of social host liability do not apply in this case, they argue that the Pelletiers owed a duty of reasonable care for the safety of their guests—including the decedent—who were on the premises as guests at the graduation party. The plaintiffs contend that this duty is evidenced by the fact that the Pelletiers witnessed Hebert providing ATV rides on their property, yet failed to take any measures to prevent what they knew was an unsafe practice.

It is well settled that "[t]o properly set forth 'a claim for negligence, a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" <u>Brown v. Stanley</u>, 84 A.3d 1157, 1161-62 (R.I. 2014) (quoting <u>Willis</u>, 954 A.2d at 129). However, a defendant cannot be held liable under any theory of negligence "unless the defendant owes a duty to the plaintiff." <u>Id.</u> at 1162 (quoting <u>Ferreira v. Strack</u>, 636 A.2d 682, 685 (R.I. 1994)). Whether a legal duty exists in any given case is a question of law for the court. <u>Willis</u>, 954 A.2d at 129 (citing <u>Martin</u>, 871 A.2d at 915). "If the court finds that no duty exists, 'the trier of fact has nothing to consider and a motion for summary judgment must be granted.'" <u>Gushlaw v. Milner</u>, 42 A.3d 1245, 1252 (R.I. 2012) (quoting <u>Berardis v. Louangxay</u>, 969 A.2d 1288, 1291 (R.I. 2009)). We note, however, that "[b]ecause there is no set formula for finding a legal duty, such a determination must be made on a case-by-case basis." <u>Brown</u>, 84 A.3d at

1162 (quoting Willis, 954 A.2d at 130). We therefore proceed to examine "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." Gushlaw, 42 A.3d at 1252 (quoting Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003)).

In Rhode Island, the common law distinctions between invitees and licensees have long been abolished. Bucki v. Hawkins, 914 A.2d 491, 495 (R.I. 2007) (citing Mariorenzi v. Joseph DiPonte, Inc., 114 R.I. 294, 307, 333 A.2d 127, 133 (1975)). Instead, our courts apply a reasonableness test to premises liability actions, requiring the determination of whether a landowner has satisfied his or her "affirmative duty to exercise reasonable care for the safety of all people reasonably expected to be upon the premises." Id. (citing Mariorenzi, 114 R.I. at 307, 333 A.2d at 133). This duty "includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." Id. (quoting Mead v. Papa Razzi Restaurant, 840 A.2d 1103, 1107 (R.I. 2004)). We have stated that our "rationale for the imposition of this duty rests firmly on the landowner's possession of the premises and his or her attendant right and obligation to control the premises." Wyso v. Full Moon Tide, LLC, 78 A.3d 747, 751 (R.I. 2013) (citing Ferreira, 636 A.2d at 685).

This Court has, however, recognized that a landowner may also be liable for injuries occurring outside the premises when he or she allows a dangerous condition or activity to exist on their land:

"[I]f a possessor of land knows or should know that a condition or activity upon her property is unreasonably dangerous, but [he or] she nonetheless fails to take action to rectify that condition or activity within a reasonable time after discovering its existence, [he or] she is liable to innocent individuals outside of the land who are harmed as a result of that condition or activity." Volpe, 821 A.2d at 712 (citing Restatement (Second) Torts § 364 at 259-60 and § 371 at 275 (1965)).

In Volpe, the plaintiff's decedent was killed—while on his own property—by the defendant's mentally ill adult son, who shot the decedent as he was trimming a hedge that ran between the defendant's and the decedent's property. Id. at 702-03. At the time, the defendant's son was living in the defendant's home and kept an assortment of guns and ammunition on the premises. Id. The decedent's next of kin subsequently brought a wrongful death action against the defendant, claiming that the defendant was negligent in allowing her mentally ill son—who had been institutionalized and who was prone to hallucinations and paranoia—to keep guns and ammunition on her property because the defendant knew or should have known that this activity created an unreasonable risk of bodily harm to others. Id. at 703, 707. After the jury found the defendant negligent, the trial justice granted the defendant's motion for a new trial, claiming that no legal duty arose in the case and that she had incorrectly allowed the case to go to the jury. Id. at 704.

On appeal, we reversed the trial justice's ruling and held that although "each possessor of land owes to those outside the premises a duty to use reasonable care to prevent them from being injured as a result of activities on their property * * * [t]his duty extends to activities conducted by third parties on the possessor's property if the possessor has the power to control such activities." Volpe, 821 A.2d at 705 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 57 at 387, 392 (5th ed. 1984)) (emphasis added). We specified that, in order for this duty to arise, however, the landowner must "(1) know or have reason to know that they have

- 7 -

the ability to control the person(s) using their land, and (2) know or should know of the necessity and opportunity for exercising such control." Id. at 706 (citing Restatement (Second) Torts § 318 at 127). We also clarified that this legal principle "does not create strict liability for those possessors of property who permit third parties to conduct an activity on their property that creates an unreasonable risk of bodily harm to others, even in situations when, as [in Volpe], the possessor and the third-party user are related to one another." Id. After this Court determined that sufficient evidence had been presented for a jury to conclude that both of the conditions to the rule were met based on the facts of Volpe, we "caution[ed] against any hasty extrapolation of the legal principles discussed in this opinion to different factual scenarios." Id. at 718.

Two years after Volpe, this Court decided Martin, 871 A.2d at 914, a social host and premises liability action in which an underage guest was attacked during a party at the defendant's home where alcohol was being served to minors. In Martin, we reiterated the general rule that "a landowner has no duty to protect another from harm caused by the dangerous or illegal acts of a third party." Id. at 915 (citing Luoni v. Berube, 729 N.E.2d 1108, 1111 (Mass. 2000)). We noted that "[a]n exception to this rule exists, however, when a plaintiff and a defendant bear a special relationship to each other." Id. Accordingly, this Court determined that a special relationship existed where an adult provided intoxicating beverages to underage partygoers so as to impose a duty upon the landowner to take reasonable steps to protect their guests from injury. Id. at 916.

After scrutinizing the facts of the case at bar against our existing case law, we decline to create the duty requested by plaintiffs. The facts of this case are readily distinguishable from those which led to our holding in Volpe. Here, we are not faced with a scenario where something emanating from the property—like the shotgun blasts in Volpe—caused harm to an

innocent and unknowing third party who was in close proximity to, yet still outside, the property. In fact, we specified that our analysis in Volpe would likely have been different if the mentally ill son had traveled from the defendant's property to commit his heinous act. Volpe, 821 A.2d at 713 ("Unfortunately, [the] defendant's house functioned as this mentally disturbed murderer's convenient armory and sanctuary from which he readily could emerge and to which he readily could retreat after acting on whatever compulsion, delusion, or hallucination propelled him into causing this victim's death."). Moreover, although plaintiffs do not allege strict liability, we note that the mere presence of Hebert's ATV does not create an inherently dangerous condition upon the Pelletiers' property under principles of premises liability.

We are also satisfied that, based on the facts of this case, there is no indication that the Pelletiers had the ability to control Hebert's actions so as to prevent injury to Ashley. Although we in no way mean to diminish the tragic outcome of these facts, it is nonetheless undisputed that the adult Ashley requested a ride from Hebert—who was also an adult—then voluntarily mounted the ATV, and, after declining the offer of a helmet, drove off the Pelletiers' property with Hebert. No special relationship existed between the Pelletiers and Ashley that would require them to protect her, nor did the Pelletiers have the legal ability to control either Ashley's or Hebert's actions either on or off the premises.

Additionally, we note that the scope and burden of the obligation that the plaintiffs ask to be imposed upon the defendants is practically insurmountable and contrary to public policy. Imposing such a duty would cause landowners to face liability in seemingly innocuous, yet—in retrospect—"dangerous" situations. Accordingly, despite the tragic facts present in this case, "[i]t is not the function of this Court to declare a duty when none exists." Berman v. Sitrin, 991 A.2d 1038, 1048 (R.I. 2010).

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

The papers in this case may be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**       Kimberly S. Phelps et al. v. Gregory Hebert et al.

**CASE NO:**           No. 2012-315-Appeal.
                       (KC 09-416)

**COURT:**              Supreme Court

**DATE OPINION FILED:**  June 27, 2014

**JUSTICES:**           Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**       Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Kent County Superior Court

**JUDGE FROM LOWER COURT**:

                Associate Justice Allen P. Rubine

**ATTORNEYS ON APPEAL:**

                For Plaintiffs:  Christopher E. Hultquist, Esq.

                For Defendants:  Joseph A. DiMaio, Esq.