June 19, 2017

**Supreme Court**

No. 2016-273-Appeal.
(PC 12-6123)

|  |  |
| --- | --- |
| Adam Correia | : |
| v. | : |
| John Bettencourt et al. | : |
| v. | |
| James Martitz et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Adam Correia : No. 2016-273-Appeal.
(PC 12-6123)

v. :

John Bettencourt et al. :

v. :

James Martitz et al.[1] :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The plaintiff, Adam Correia, was seriously injured when a friend's High Standard Model 1911 .45-caliber handgun accidentally discharged, causing a bullet to strike Correia in the abdomen. At the time of the accident, the friends were target shooting on property owned by the defendants, John Bettencourt and Theresa Bettencourt (the Bettencourts). The matter presently before us is Correia's appeal from a final judgment entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure in favor of the Bettencourts. This case came before the Supreme Court sitting at Woonsocket High School, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

---

[1] On March 22, 2016, a revised order granted summary judgment in favor of third-party defendant, James Martitz. The claims against all other third-party defendants were dismissed by stipulation.

# I

## Facts and Procedural History

On November 28, 2012, Correia filed a complaint against the Bettencourts and Edward Alexander in the Superior Court. The complaint alleged that the Bettencourts "knowingly allowed * * * Alexander to shoot firearms" on their property, located in Warren, Rhode Island (the property); that on or about August 7, 2011, Correia was invited to the property by Alexander; and that he went to the property to shoot firearms there. The complaint further alleges that "Alexander negligently handled a firearm and shot * * * Correia in the abdomen" and that Correia suffered serious bodily injuries as a result.

Count 1 of the complaint alleges negligence against Alexander.[2] Count 2 alleges that the Bettencourts breached their duty to control Alexander pursuant to Restatement (Second) Torts § 318 (1965).[3] Count 3 of the complaint claims that the Bettencourts were negligent by failing to protect Correia under § 314A of the Restatement (Second) Torts (1965).[4] Count 4 of the complaint alleges that, under the ad hoc duty analysis set forth in Banks v. Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987), the Bettencourts failed to exercise reasonable care. Count 5 is

---

[2] This is not an issue before us as Alexander is not a party to this appeal.

[3] Section 318 of the Restatement (Second) Torts (1965) provides:
> "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
>> "(a) knows or has reason to know that he has the ability to control the third person, and
>> "(b) knows or should know of the necessity and opportunity for exercising such control."

[4] In his written submissions and at oral argument, Correia abandoned his claims against the Bettencourts under § 314A of the Restatement (Second) Torts (1965).

a claim of premises liability against the Bettencourts, and count 6 alleges that their failure to supervise Alexander resulted in Correia's injuries.

On March 23, 2016, the Bettencourts filed a motion for summary judgment on all counts against them in Correia's complaint. In their motion, the Bettencourts argued that no duty of care existed which would entitle Correia to recovery because they were not present at, nor were they informed of, the dangerous activity and therefore they "had no opportunity to control the actions of Alexander"—an essential element under § 318 of the Restatement. They further argued that Correia's allegations under common law negligence and premises liability also must fail under the general rule expressed in <u>Gushlaw v. Milner</u>, 42 A.3d 1245, 1253 (R.I. 2012) that "[t]here is * * * no duty to control a third party's conduct to prevent harm to another individual[.]"

Correia filed an objection to the Bettencourts' motion for summary judgment. In his objection, Correia alleged that the Bettencourts leased a portion of the property to Alexander, John Bettencourt's cousin,[5] "who kept cows, chickens, a trailer, and other items on the [p]roperty" and allowed Alexander's "friends to utilize [the] property as a shooting gallery," an activity in which Alexander had engaged on the property in the past. Correia supported these allegations with his own deposition testimony, as well as that of Alexander and James Martitz, who was also present on the property the day of the accident.

On June 7, 2016, a hearing on the Bettencourts' motion for summary judgment was held. The hearing justice summarized the facts of the case, stating: "Three guys decided to go do some shooting. They went out to the * * * Bettencourts' property and fired some shots and * * * the pistol or rifle jammed and a bullet was discharged accidentally and it went into * * * Correia's

---

[5] Although the motion for summary judgment states that they are cousins, the complaint alleges that Alexander was John Bettencourt's nephew.

stomach and he sued * * * the landowners." The hearing justice cited to the general rule applicable to negligence actions as set forth in Willis v. Omar, 954 A.2d 126 (R.I. 2008) that "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff * * *." Id. at 129 (quoting Mills v. State Sales, Inc., 824 A.2d 461, 467 (R.I. 2003)). The hearing justice also considered § 318 of the Restatement (Second) Torts and Volpe v. Gallagher, 821 A.2d 699, 706-10 (R.I. 2003).[6] The hearing justice determined that "the presence of the landowner appears to be a key factor, perhaps the key factor, when deciding if the duty existed." He ruled that, because "[n]o competent evidence ha[d] been introduced to suggest that the Bettencourts were present on the property when Alexander accidentally discharged his weapon and shot Correia[,]" no duty existed on the part of the Bettencourts to protect Correia from harm due to the actions of Alexander.

On June 9, 2016, the Superior Court issued an order granting summary judgment to the Bettencourts. On June 23, 2016, Correia filed a premature notice of appeal.[7]

**II**

**Standard of Review**

"In passing on a motion for summary judgment, the trial justice must determine whether there is a genuine issue of material fact, and if not, the trial justice must determine whether the moving party is entitled to judgment as a matter of law." Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995). "The trial justice relies upon an examination of the pleadings, depositions, answers

---

[6] In Volpe v. Gallagher, 821 A.2d 699, 706-10 (R.I. 2003), this Court held that the mother of a mentally ill son had a duty to exercise reasonable care to control her son's conduct while he was on her property so as to prevent him from creating an unreasonable risk of harm to others.

[7] On August 1, 2016, Correia filed a motion for entry of final judgment. On August 18, 2016, the Superior Court entered an order granting the motion and entered final judgment in favor of the Bettencourts pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. Because final judgment entered, Correia's premature notice of appeal is valid. See State v. Lopez, 45 A.3d 1, 9 n.18 (R.I. 2012).

to interrogatories, admissions, affidavits, and memoranda of law and reviews them in the light most favorable to the nonmoving party." Id. "If no genuine issue of material fact is found, then the moving party is entitled to judgment as a matter of law." Id.

"This Court will review the grant of a motion for summary judgment de novo, 'employing the same standards and rules used by the hearing justice.'" Newstone Development, LLC v. East Pacific, LLC, 140 A.3d 100, 103 (R.I. 2016) (quoting Daniels v. Fluette, 64 A.3d 302, 304 (R.I. 2013)). "We will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. (quoting Daniels, 64 A.3d at 304). Moreover, "the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Id. (quoting Daniels, 64 A.3d at 304).

This Court has often instructed that "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." Newstone Development, LLC, 140 A.3d at 103 (quoting Holley v. Argonaut Holdings, Inc., 968 A.2d 271, 274 (R.I. 2009)). "However, 'summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" Id. (quoting Lavoie v. North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007)).

### III

### Discussion

Correia's theories of recovery rely on the existence of a legally cognizable duty on the part of the Bettencourts. "[T]he existence of a duty is a question of law." Berard v. HCP, Inc.,

64 A.3d 1215, 1218 (R.I. 2013). The assessment of whether or not a duty exists is conducted on a "case-by-case basis." Gushlaw, 42 A.3d at 1252 (quoting Willis, 954 A.2d at 130). "If the court finds that no duty exists, 'the trier of fact has nothing to consider and a motion for summary judgment must be granted.'" Id. (quoting Berardis v. Louangxay, 969 A.2d 1288, 1291 (R.I. 2009)).

The question squarely before this Court is whether John Bettencourt (Bettencourt) had a duty to exercise reasonable care to protect Correia from the negligence of a third party, Alexander.[8] To determine whether a duty exists in a particular instance, "we examine 'all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness.'" Gushlaw, 42 A.3d at 1252 (quoting Volpe, 821 A.2d at 705). We also consider the "foreseeability of harm to the plaintiff." Banks, 522 A.2d at 1225. In Volpe, 821 A.2d at 706, this Court adopted the legal principles set forth in Restatement (Second) Torts, § 318, entitled "Duty of Possessor of Land or Chattels to Control Conduct of Licensee." We declared:

> "Under § 318 of the [R]estatement, when possessors of property allow one or more persons to use their land or personal property, they are, if present, under a conditional duty to exercise reasonable care to control the conduct of such users to prevent them from intentionally harming others or from conducting themselves on the possessors' property in a manner that would create an unreasonable risk of bodily harm to others." Volpe, 821 A.2d at 706.

The conditions under the Restatement are that "the possessors of the property must (1) know or have reason to know that they have the ability to control the person(s) using their land, and (2) know or should know of the necessity and opportunity for exercising such control." Id.; see also Restatemment (Second) Torts § 318 at 127.

---

[8] At oral argument, Correia conceded that only John Bettencourt's duty is an issue before us.

Correia's arguments on appeal rest mainly on the assertion that the Superior Court erred in deciding that physical presence was necessary to establish a negligence claim based on land-ownership. Correia cites Phelps v. Hebert, 93 A.3d 942, 948 (R.I. 2014) (property owner did not have duty to guest who sustained fatal injuries in ATV accident that occurred off the property); Gushlaw, 42 A.3d at 1247, 1257 (the defendant who transported intoxicated tortfeasor to his car did not owe a duty of care to motorist to prevent tortfeasor from driving his vehicle while intoxicated); Martin v. Marciano, 871 A.2d 911, 913, 916 (R.I. 2005) (property owner who made alcohol available to underage guests had duty to take reasonable steps to protect guests from injury caused by other guests and third parties); and Volpe, to support his proposition that "the existence of a duty hinges on knowledge and the ability to control, and not physical presence" of the landowner on the property. Correia argues that knowledge and control are issues of fact and are not appropriate for disposition by summary judgment.

The language of § 318 of the Restatement, however, clearly expresses that a duty arises only if the landowner is present. In Volpe, 821 A.2d at 702-03, a landowner's son shot and killed a next-door neighbor who was trimming hedges between the houses. This Court explained that the landowner had a duty because she knew or should have known that she could control her son, who had "suffered for many years from an increasingly severe and delusional mental illness," by requiring him to remove his guns from her property. Id. at 702, 707 n.2. However, the case did not rise or fall on control alone; instead, this Court determined that the defendant landowner was present within the meaning of § 318 of the Restatement "because she was there when her son engaged in the conduct that created an unreasonable risk of harm to others; namely, using [the] defendant's house for possessing and storing his guns and ammunition." Volpe, 821 A.2d at 706. This Court explained that, while the defendant need not necessarily be

present at the time when the harm occurred, the defendant must be present at the time when the third party "engaged in the conduct that created an unreasonable risk of harm to others." Id. at 707. In Volpe, such conduct was the possession and storage of guns and ammunition in the defendant's home. Id. The Volpe Court thus adopted § 318 of the Restatement and emphasized that physical presence is an important element to establish the existence of a duty thereunder. Volpe, 821 A.2d at 707.

Here, Correia never alleged that Bettencourt was present on the property at any relevant time. Instead, Correia argues that Bettencourt's knowledge of his ability to control Alexander's use of the property and his knowledge of the necessity and opportunity to exercise his control should be the determinative factors. He asserts that Bettencourt knew that he had the "power to control who enters and who remains on the property" and that John Bettencourt knew or should have known that Alexander and his friends would be engaging in the inherently dangerous activity of shooting firearms. Correia further argues that the foreseeability of harm was great, that imposing a duty in this case would not create an unreasonable burden on Bettencourt, and that such a duty would comport with sound public policy.

We decline, however, in the circumstances of this case, to broaden a property owner's duty of care any wider than that delineated in Volpe. Both Volpe and § 318 of the Restatement require a property owner to be present before imposing liability on the property owner for the conduct of persons using the owners' property. In the case under review, the allegedly dangerous activity involved target shooting by three adults on Bettencourt's property.[9] No evidence was proffered that Bettencourt was present when the accident occurred. Therefore, we

---

[9] Significantly, it is uncontested that the three men brought the firearms to the property, thereby introducing the allegedly dangerous activity to the property.

are of the opinion that no duty of care existed under either § 318 of the Restatement or common law negligence.

We next turn to count 5 of Correia's complaint, which alleged, in pertinent part, that Bettencourt owed a duty to use reasonable care for the safety of all persons reasonably expected to be on the property. On appeal, Correia argues that allowing Alexander and his friends to shoot guns on the property constituted the allowance of a dangerous condition on the property.

"Premises liability" is defined in Black's Law Dictionary 1219 (8th ed. 2004) as "[a] landowner's or landholder's tort liability for conditions or activities on the premises." Premises liability law in Rhode Island:

> "imposes an affirmative duty upon owners and possessors of property: 'to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition.'" Kurczy v. St. Joseph Veterans Association, Inc., 820 A.2d 929, 935 (R.I. 2003) (quoting Tancrelle v. Friendly Ice Cream Corp., 756 A.2d 744, 752 (R.I. 2000)).

"With respect to invitees and licensees, courts must determine whether landowners have satisfied their affirmative duty to exercise reasonable care for the safety of all people reasonably expected to be upon the premises." Bucki v. Hawkins, 914 A.2d 491, 495 (R.I. 2007). "[T]hat duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." Id. (quoting Mead v. Papa Razzi Restaurant, 840 A.2d 1103, 1107 (R.I. 2004)).

The facts here are somewhat similar to those in Phelps, where property owners were alleged to have allowed Hebert, a guest at their son's graduation party, to bring an all-terrain

vehicle (ATV) onto their property and to operate the ATV in a reckless manner, resulting in the death of plaintiffs' daughter, Ashley, another guest. Phelps, 93 A.3d at 944-45. In Phelps, the plaintiffs' contended that the defendants "witnessed Hebert providing ATV rides on their property, yet failed to take any measures to prevent what they knew was an unsafe practice." Id. at 946. This Court explained that no special relationship existed between Ashley and the defendants and that the defendants had no duty to protect Ashley or control Hebert as there was "no indication that the [defendants] had the ability to control Hebert's actions so as to prevent injury to Ashley" and as it was "undisputed that the adult Ashley requested a ride from Hebert—who was also an adult—then voluntarily mounted the ATV, and, after declining the offer of a helmet, drove off the [defendants'] property with Hebert." Id. at 948. Although the facts here are clearly distinguishable from those in Phelps in several significant respects, this Court explained in Phelps that the defendants did not "have the legal ability to control either Ashley's or Hebert's actions either on or off the premises." Id.

While our analysis in Phelps is instructive with respect to our decision here, the determinative factor fatal to Correia's claim is the fact that Correia not only voluntarily participated in the allegedly dangerous activity on the property but, in fact, brought the instrumentalities necessary for engaging in such activity onto the property and, thereby, willingly created the dangerous condition himself.

Here, the complaint alleged that Bettencourt knowingly allowed Alexander to shoot on the property, that Alexander invited Correia to enter the property on or about August 7, 2011, and that Correia entered the property with the purpose of shooting with Alexander. Though Correia does allege that he was permitted onto the property by Bettencourt and that Bettencourt "knew or should have known" of his intention to shoot guns on the property, there is no

allegation in the complaint that there was a dangerous condition existing on the property at the time Correia entered the property. Rather, the alleged dangerous activity is the activity of shooting firearms—an activity created by Correia, Alexander, and Martitz when they voluntarily carried the firearms onto the property with the intention of shooting them thereon.

After carefully reviewing the record and considering all relevant factors in our analysis of the duty issue, we conclude that no material facts are at issue in this case and that the factual circumstances presented before us do not give rise to the imposition of a duty upon Bettencourt.[10]

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

---

[10] We need not address count 6 of the complaint as the discussion above is determinative, and because Correia does not argue this point in his papers before this Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Adam Correia v. John Bettencourt et al. v. James Martitz et al. |
| **Case Number** | No. 2016-273-Appeal. (PC 12-6123) |
| **Date Opinion Filed** | June 19, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Geoffrey M. Aptt, Esq.<br>Michael Prew, Esq. |
| | For Defendants:<br><br>Sean C. Joanis, Esq.<br>Thomas A. Madden, Esq. |