March 8, 2022

Maria C. Rosa                    :

v.                    :

PJC of Rhode Island, Inc. formerly    :
Rite Aid of Rhode Island, Inc. a/k/a
Rite Aid Pharmacy a/k/a/ Rite Aid
Corporation, et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Maria C. Rosa                          :

v.                               :

PJC of Rhode Island, Inc. formerly     :
Rite Aid of Rhode Island, Inc. a/k/a
Rite Aid Pharmacy a/k/a Rite Aid
Corporation, et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**   The plaintiff, Maria Rosa, appeals from a March 10, 2020 judgment entered following a bench decision in Providence County Superior Court granting the motion for summary judgment filed by the defendant, Belltower Acquisitions, LLC (Belltower Acquisitions).   Ms. Rosa argues on appeal that the Superior Court erred in granting Belltower Acquisitions's motion for summary judgment because, she contends, it had not fully complied with the certificate provision of G.L. 1956 § 34-36.1-3.01 and so is jointly and severally liable for the injuries which she allegedly sustained as a result of a slip and fall incident on a sidewalk adjacent to Belltower Acquisitions's property.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The following facts are gleaned from the exhibits attached to Belltower Acquisitions's memorandum in support of its motion for summary judgment and from Ms. Rosa's memorandum in opposition to Belltower Acquisitions's dispositive motion.

This case arises out of an alleged slip and fall incident at the Bell Tower Plaza, a commercial condominium complex in Bristol, Rhode Island. Ms. Rosa claims that she fell on a sidewalk adjacent to a Rite Aid Pharmacy on March 6, 2015 and that said fall caused her to suffer severe and lasting injuries to her knee.[1] PJC of Rhode Island (PJC), a defendant in this case, doing business as Rite Aid Pharmacy, leased the unit from Belltower Acquisitions.

On May 3, 1988, the Belltower Plaza Condominium was created through its filing of a Declaration of Condominium (the Declaration) pursuant to § 34-36.1-2.01 of the Rhode Island Condominium Act (the RICA). The Declaration established the Belltower Condominium Plaza Association (the

---

[1]    Viewing the facts in the light most favorable to Ms. Rosa, as we must at this step, we assume for the remainder of this opinion that her slip and fall occurred as alleged and that her injuries resulted therefrom.

Association) as an unincorporated association, set forth the procedures governing the organization of the board of directors, and detailed the powers and duties of the Association, which include maintenance of the common elements of the condominium. Pursuant to § 34-36.1-3.01, the Association was required to file a certificate with the "city or town in which the condominium is located" (the Certificate); that document would include information as to how one might contact the Association's executive board. Although the pertinent individuals appear to have signed and dated the Certificate on March 1, 2015, five days before the slip and fall incident at issue in this case, the Association did not actually file it with the Town of Bristol until March 27, 2015. For the purpose of this appeal, Belltower Acquisitions has assumed without conceding that the Certificate was not actually filed before the slip and fall incident.

Ms. Rosa filed a complaint against both PJC and Belltower Acquisitions on February 26, 2018, seeking damages for her injuries.[2] She did not name the Association as a defendant in her suit. Belltower Acquisitions moved for summary judgment on the grounds that, pursuant to the Declaration, it was the Association that was charged with maintaining the sidewalk, a common element of the condominium, and that, as such, Belltower Acquisitions owed no duty of care to Ms. Rosa in that regard. Ms. Rosa contended in response that Belltower

---

[2]     Ms. Rosa's case against PJC remains pending before the Superior Court.

Acquisitions owned fifteen of the twenty-one condominium units, had a 79.72 percent interest in the common elements and facilities, and possessed "71% of the condominium's voting control."[3] She argued that, due to Belltower Acquisitions's "unique level of ownership and control," it owed her a duty of care; she added that "this Defendant is virtually the association." Ms. Rosa went on to posit that Belltower Acquisitions was in fact the "alter ego" of the Association due to the level of control it possessed over the condominium.[4] She further averred that Belltower Acquisitions was in control of the condominium due to the fact that the Association was actually never properly created because it failed to file its Certificate until after the slip and fall. She further contended that, as a consequence of that failure to file, the unit owners were rendered jointly and severally liable in tort for the injuries that she sustained as a result of the slip and fall.

The hearing justice considered whether or not failure to comply with § 34-36.1-3.01 affected the Association's legal status and ultimately concluded that

---

[3] Ms. Rosa also contended that Belltower Acquisitions owned 81 percent of the condominium.

[4] Ms. Rosa mentions a similar alter ego argument in her memoranda before this Court, but she has not developed that argument in any meaningful way. *See Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n.1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.").

the certificate provision in § 34-36.1-3.01 was directory rather than mandatory; she granted summary judgment to Belltower Acquisitions on that basis. The hearing justice reasoned that the statutory provision about the filing of a certificate was "designed to provide order, system and dispatch;" she ruled that the provision was a "management tool" and was "not a consumer protection type notice * * *." The hearing justice further noted that, even if the purpose of the certificate were to serve as public notice of the membership of the executive board, "that purpose was satisfied because by the time suit was filed that notice was on record and had been on record for a couple of years." She also stated that "the absence of this notice being recorded at the time plaintiff slipped and fell * * * in the common areas of the property does not mean that the condominium association was not in legal existence or otherwise impacts the respective rights and responsibilities of the condominium association and the individual unit owners at the time."

On February 7, 2020, the hearing justice entered an order granting the motion for summary judgment. Judgment entered for Belltower Acquisitions pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure on March 10, 2020. Ms. Rosa thereafter filed a timely notice of appeal.

## II

## Standard of Review

This Court reviews the grant of a motion for summary judgment *de novo* and in the same manner as the hearing justice. *Correia v. Bettencourt*, 162 A.3d 630, 635 (R.I. 2017). We will affirm the hearing justice's ruling if, after reviewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The non-movant "bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)).

"This Court likewise reviews questions of statutory interpretation *de novo*." *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012). And, "[i]f the language of a statute is unambiguous, this Court applies the plain and ordinary meaning of that language to the statute's provisions." *Middle Creek Farm, LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 751 (R.I. 2021). If the language of the statute is ambiguous, "it is incumbent upon us to apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Powers v. Warwick Public Schools*, 204 A.3d 1078,

1086 (R.I. 2019) (quoting *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014)). In appropriate cases, the official comments in a statute may provide "guidance concerning the legislative intent * * *." *Sisto v. America Condominium Association, Inc.*, 68 A.3d 603, 611 (R.I. 2013) (quoting *America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117, 127 (R.I. 2004)).

## III

## Analysis

Ms. Rosa contends that, at the time of the incident, the Association had not yet filed its Certificate and that, therefore, the Association was in violation of § 34-36.1-3.01. In Ms. Rosa's view, the certificate provision is mandatory, and the appropriate consequence for non-compliance should be that the individual unit owners are treated as jointly and severally liable in tort. She reasons that, until the Association filed the Certificate, it was not an "unincorporated association" under the RICA and therefore could not avail itself of the liability protections provided for in § 34-36.1-3.11.[5] Rather, she considers the Association to be the type of

---

[5] Ms. Rosa contends that the Association was not an "unincorporated association" under the RICA due to the failure to properly organize under G.L. 1956 § 34-36.1-3.01, which contention calls into question the validity of any action taken by the Association since the signing of the Declaration in 1988. Ms. Rosa's contention is unavailing. If the unit owners failed to organize "as a profit or nonprofit corporation or as an unincorporated association" as required by § 34-36.1-3.01, any action the improperly formed association took would be suspect—including entering into contracts, the sale or purchase of property, and engaging in investments and other financial transactions. It is well established that

unincorporated association subject to the generally applicable liability law for such associations under G.L. 1956 §§ 9-2-10, 9-2-12, and 9-2-14.[6]

Section 34-36.1-3.01 details the procedures for forming a unit owners' association and provides in relevant part as follows:

> "A unit owners' association *must* be organized no later than the date the first unit in the condominium is conveyed to a purchaser. * * * The association *shall* be organized as a profit or nonprofit corporation or as an unincorporated association. In the case of an unincorporated association, a certificate evidencing the names of the executive board members and mailing address for the association *shall* be recorded with the municipal land records department for the city or town in which the condominium is located, which *shall* be updated as often as necessary to reflect any changes in the composition of the executive board." Section 34-36.1-3.01 (emphasis added).

Ms. Rosa asserts that the plain meaning of the words "must" and "shall" in § 34-36.1-3.01 evince the General Assembly's intent that compliance is mandatory. We do not question that the General Assembly intended that there be compliance with the statute, including the requirement about the filing of the Certificate. *See* § 34-36.1-3.01. To view it otherwise would render the provision

---

"statutes should not be construed to achieve meaningless or absurd results;" accordingly, we decline to adopt Ms. Rosa's proposed interpretation of the statutes at issue. *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I. 2011) (quoting *Berthiaume v. School Committee of City of Woonsocket*, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979)).

[6]  Section 34-36.1-1.08 allows general principles of law to supplement the RICA.

superfluous. However, we are still left to determine whether the statute is in fact mandatory or merely directory and what consequences for non-compliance follow.

While a violation "of a mandatory statute either invalidates the transaction or subjects the noncomplier to the consequences stated in the statute," failure to comply with a directory statute does not have such consequences "since there is a permissive element." 1A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 25:3 (7th ed. 2007).

This Court has stated that, "'where the language [of a statute] is directed at public officers or where the [L]egislature does not provide a sanction for the failure to meet that requirement,' the statute may be deemed directory 'so long as substantial rights of the parties are not prejudiced.'" *Begg v. Alexander-Scott*, 242 A.3d 23, 29 (R.I. 2020) (quoting *Whittemore v. Thompson*, 139 A.3d 530, 548 (R.I. 2016)). As such, "where the act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized." *Id.* (internal quotation marks omitted).[7]

While § 34-36.1-3.01 is not directed at a public officer, the General Assembly did choose not to include any sanctions for non-compliance, and it is our

---

[7]  In assessing whether or not a "time provision[]" in a statute was directory, we have also focused our attention on whether or not the time provision was the "essence of the statute * * *." *West v. McDonald*, 18 A.3d 526, 534 (R.I. 2011).

view that the principle relative to sanction-free statutes should apply in a situation such as the one presented by this case. *See Begg*, 242 A.3d at 29.

Moreover, we note that, although the Association failed to comply with the procedural requirements of § 34-36.1-3.01 prior to Ms. Rosa's injury, it did substantially comply with the statute shortly after Ms. Rosa's injury. As such, it cannot be said that Ms. Rosa's substantial rights were prejudiced given the fact that the Certificate was filed not long after her injury and *years* before the commencement of this case. *See Begg*, 242 A.3d at 29. Ms. Rosa still remains free to move to amend her complaint so as to add a new party defendant—subject, of course, to all available defenses.

What is more, it is equally clear that the purpose of the statute has been substantially complied with in this case. *See id.* As the committee comments to § 34-36.1-3.01 indicate, the statute was intended to provide a legal structure for unit owners and involve them in the condominium's governance; the comment does not indicate that it was intended to provide notice to the public of the membership of the executive board. The essence of the statute was therefore complied with when the Declaration was executed forming the Association, and there is no evidence in the record that the Association was not fulfilling its governance obligations from the time of its inception; it simply failed to file the Certificate until after the slip and fall incident. It is clear to this Court that the

procedural provision in § 34-36.1-3.01 requiring the filing of the Certificate is not closely linked to the primary purpose of the statute.

Accordingly, in view of the fact that the General Assembly did not provide any sanctions in § 34-36.1-3.01 for failure to timely file the Certificate, the fact that Ms. Rosa's substantial rights were not prejudiced by the belated filing of the Certificate, and the fact that the filing of the Certificate was not closely linked to the broader purpose which the statute was enacted to effectuate, it is completely clear to us that the General Assembly intended the certificate requirement to be directory rather than mandatory.

In view of these considerations, we have reached the ineluctable conclusion that the Superior Court did not err when it concluded that the certificate requirement in § 34-36.1-3.01 is directory and when it granted summary judgment to Belltower Acquisitions.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Maria Rosa v. PJC of Rhode Island, Inc. formerly Rite Aid of Rhode Island, Inc. a/k/a Rite Aid Pharmacy a/k/a Rite Aid Corporation, et al. |
| **Case Number** | No. 2020-246-Appeal. (PC 18-1230) |
| **Date Opinion Filed** | March 8, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Alfred R. Rego, Jr., Esq. |
| | For Defendant: <br><br> Stanley F. Pupecki, Esq. <br> Gregory A. Carrara, Esq. <br> Mark P. Dolan, Esq. |